**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION**

| | | |
|---|---|---|
| **DWAYNE ANDERSON** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **No. 2:22-cv-02402-TLP-atc** |
| | ) | |
| **MEMPHIS UNION MISSION; D. SCOTT** | ) | |
| **BJORK; TERRY BRIMHALL; JAMES** | ) | |
| **LEE; RANDY DANIELS; JEFF PATRICK;** | ) | |
| **REX GOSS; ED (FULL NAME** | ) | |
| **UNKNOWN); INTERNAL REVENUE** | ) | |
| **SERVICE; AND U.S. DISTRICT** | ) | |
| **ATTORNEY GENERAL – WESTERN** | ) | |
| **DISTRICT OF TENNESSEE;** | ) | |
| | ) | |
| **Defendants.** | ) | |

**REPORT AND RECOMMENDATION AND ORDER ON OUSTANDING MOTIONS**

Before the Court are multiple motions.[1]  First is the Motion to Screen Complaint Under Local Rule 4.1(b)(2) and 28 U.S.C. § 1915(e)(2)(B) and Motion to Extend Deadline to Respond to the Complaint, filed by Defendants Internal Revenue Service ("IRS") and the United States Attorney for the Western District of Tennessee (the "U.S. Attorney") (collectively the "Federal Defendants").  (ECF No. 7.)  *Pro se* Plaintiff Dwayne Anderson filed his response to the motion on July 8, 2022.  (ECF No. 13.)  The same day, Anderson filed a Motion for Sanctions (ECF No. 12), which the Federal Defendants responded to on August 20, 2022 (ECF No. 15).  Anderson filed a second Motion for Monetary Sanctions on August 26, 2022 (ECF No. 16), which the

---

[1] This case has been referred to the United States Magistrate Judge for management and for all pretrial matters for determination and/or report and recommendation as appropriate.  (Admin. Order 2013-05, Apr. 29, 2013.)

Federal Defendants responded to on September 2, 2022 (ECF No. 17).  Anderson filed a reply to

that response on September 12, 2022, without leave of Court.  (ECF No. 18.)  After the Federal

Defendants moved to strike that reply on September 26, 2022 (ECF No. 19), Anderson filed a

response to that motion to strike on October 14, 2022 (ECF No. 20).

For the following reasons, the Court recommends granting the Federal Defendants'

motion to screen the complaint and dismissing all of the claims based on federal law in

Anderson's complaint as to all the Defendants.  It also recommends that both of Anderson's

motions for sanctions be denied.  It is further recommended that the remaining state-law claims

be remanded to the Circuit Court of Tennessee for the Thirtieth Judicial District at Memphis,

where the case was filed prior to its removal to this Court.

## PROPOSED FINDINGS OF FACT

This lawsuit stems from an incident in May 2022, in which Anderson alleges that the

Memphis Union Mission ("MUM") improperly disposed of two bags containing his personal

property.  (ECF No. 1-1, at 2.)[2]  Anderson asserts that he was homeless and had been staying at

MUM.  (*Id.*)  On May 19, Anderson returned to MUM and sought to retrieve his bags, which

were stored in a room among the personal property of other MUM guests and which Anderson

had accessed the day before.  (*Id.*)  A MUM employee told Anderson that earlier that day a

MUM supervisor had removed several items from the property room, including Anderson's two

bags.  (*Id.*)  Anderson was then passed from one MUM employee to another, as he sought to

report that his belongings were missing.  (*Id.*)  He was eventually directed to the MUM donation

rooms after the 6 p.m. church services to search for his property.  (*Id.*)

---

[2] The facts herein are gleaned from Anderson's complaint, are accepted as true, and are
construed in a light most favorable to Anderson.  *See* Fed. R. Civ. P. 12(b)(6).

Anderson told Defendant Randy Daniels, MUM's Vice President of Operations, that he similarly had his property taken in April 2022 by Defendant Ed (whose last name is unknown). (*Id.*)  Those belongings, some of which Anderson eventually recovered, included clothing, two toboggan caps, gloves, and a new pair of And 1 tennis shoes.  (*Id.*)  Anderson filed a complaint with Defendant D. Scott Bjork, MUM's President and CEO, about that missing property, as well as other issues regarding MUM supervisors' treatment of its guests.  (*Id.* at 2–3.)

Eventually, Anderson described to Daniels the items that were in his two missing bags from the second incident, including boots, sandals, three dress shirts, a T-shirt, three pairs of boxer shorts, two jackets, a baseball cap, a toboggan cap, two pairs of earbuds, a pair of khaki pants, and a pair of gym shorts.  (*Id.* at 3.)  One of the bags also contained folders of court and legal documents, including a plethora of documents related to various lawsuits Anderson had been involved with over the years, his birth certificate, his social security card, and documents related to his mother's death and burial.  (*Id.*)

Anderson located a few of the missing items in the donation rooms, including his boots, sandals, gym shorts, and baseball cap.  (*Id.*)  He then asked Defendant Rex Goss, one of MUM's supervisors, to allow him to file a stolen property report as to the other items he could not locate. (*Id.*)  Goss told him, "I ain't filing no fucking stolen property report," and threatened to put Anderson out of MUM after Anderson stressed the importance of filing a stolen property report. (*Id.*)

The next day, May 20, Anderson informed Ed of the missing property.  (*Id.* at 3–4.)  Ed also refused to contact the Memphis police regarding the property theft and refused to complete any paperwork, allegedly because Ed was involved in the taking of the property.  (*Id.* at 4.) Anderson further alleges that Ed, as Goss's supervisor, allowed Goss to threaten once again to

put Anderson out of MUM for trying to locate his property. (*Id.*) Ed eventually capped off his discussion with Anderson by informing him that an elderly man named David, who "works to live in the mission," "got rid of your shit." (*Id.*)

What happened next appears to be what triggered Anderson's claims against the Federal Defendants. On May 3, 2022, Anderson filed a complaint with the IRS alleging fraud and abuse by MUM, as a 501(c)(3) tax-exempt charitable organization, based on the alleged theft of his property, various abuses by MUM employees of its guests, and for alleged misuses of donations made to MUM.[3] Anderson simultaneously filed a request with the U.S. Attorney to investigate alleged violations of his civil rights "for preventing me from obtaining a documentation of my said initial stolen property and a formal due process hearing, but received no response from said federal district attorney." (*Id.*)

Anderson alleges that the acts by all Defendants violated his First, Fourth, and Fourteenth amendment rights,

> whereby I was threatened for exercising my first amendment right to locate my stolen property and denied a documentation of such and a criminal investigation into such, documents unlawfully seized by MUM employees and cove[r]ed up, and denied a due process hearing, and denied an investigation by the IRS and said U.S. District Attorney and due process to be heard, and equal protection of the law by said federal officials; and the MUM defendants' acts also constituted the common law violations of theft of property, fraud, and unfair and deceptive business practices.

(*Id.*) Anderson seeks $5 million for "physical, mental, and emotional damages" and an additional $5 million in punitive damages. (*Id.* at 5.)

Anderson filed his lawsuit in the Circuit Court of Tennessee for the Thirtieth Judicial District (the "Circuit Court") on May 23, 2022. (ECF No. 1-1.) Upon filing his suit, Anderson

---

[3] Anderson asserts he filed his complaint with the IRS on May 3, 2022, in between the two incidents he alleged occurred with his property at MUM.

4

also filed a Uniform Civil Affidavit of Indigency, in which he stated he was unemployed and had

no source of income.  (*Id.* at 7–8.)  The same day, the Circuit Court entered an order finding that

Anderson was indigent and was qualified to file the case on a pauper's oath.  (*Id.* at 9.)  On June

23, 2022, the IRS and the U.S. Attorney removed the case to this Court under 28 U.S.C.

§ 1442(a)(1), which allows removal by a federal agency, its officer, or any person acting under

that officer "for or relating to any act under color of such office."  (*See* ECF No. 1.)

The Federal Defendants now move the Court to dismiss Anderson's complaint based on

their assertion that the allegations in the complaint "are totally implausible, attenuated,

unsubstantial, frivolous, devoid of merit, or no longer open to discussion."  (ECF No. 7, at 5

(quoting *Apple v. Glenn*, 183 F.3d 477, 479 (6th Cir. 1999).)

## PROPOSED CONCLUSIONS OF LAW

### I.    Recommendation to Grant the Motion to Screen Anderson's Complaint

The Federal Defendants ask this Court to "screen" Anderson's Complaint—i.e., to review

it for dismissal *sua sponte*—citing various sources of authority.  They first rely on Local Rule

4.1(b)(2), which governs the issuance of summonses and the service of process in cases with

non-prisoner *pro se* plaintiffs who are proceeding *in forma pauperis* ("IFP").  That provision,

however, is not directly implicated here, as the Federal Defendants concede that the Circuit

Court has already issued summonses, and all Defendants have appeared in this case.  (*See* ECF

No. 7, at 5.)

The Federal Defendants also cite 28 U.S.C. § 1915(e), "Proceedings in forma pauperis."

The relevant portion of the statute provides:

> (2) Notwithstanding any filing fee, or any portion thereof, that may have been
> paid, the court shall dismiss the case at any time if the court determines that—
> . . .

(B) the action or appeal—
     (i) is frivolous or malicious;
     (ii) fails to state a claim on which relief may be granted; or
     (iii) seeks monetary relief against a defendant who is immune from
     such relief.

§ 1915(e)(2)(B). The statute was enacted in response "to a perceived deluge of frivolous lawsuits." *Benson v. O'Brian*, 179 F.3d 1014, 1016 (6th Cir. 1999). "Dismissal upon certain findings by the district court was made mandatory rather than permissive," and "Congress has made it clear that the court should dismiss an in forma pauperis case at any time when grounds specified in § 1915(e)(2) become apparent." *Id.*[4]

The Federal Defendants assert that "[s]creening this case makes sense based on the allegations in Plaintiff's Complaint and the straight-forward facts in MUM and Individual Defendants' answer. Plaintiff's allegations—even if true—do not approach the plausibility necessary to establish any of the constitutional violations Plaintiff purportedly alleges against Federal Defendants." (ECF No. 7, at 5–6.) The question thus presented is whether Anderson's pauper status, determined by the Circuit Court before this case was removed, is sufficient to render this case an "in forma pauperis case" for purposes of § 1915(e)(2)(B), such that the statute's screening mandate applies.[5] Authority from within the Sixth Circuit and elsewhere suggests that it does.

---

[4] *Benson* further establishes that § 1915(e)(2) only permits such screening in IFP cases. *Id.* at 1016–17 ("[W]e conclude that the 'notwithstanding' language in § 1915(e)(2) does not expand § 1915(e)(2) beyond in forma pauperis cases. . . . Clearly, 'the case' must be an in forma pauperis case for the purposes of subsection A [permitting dismissal if the court determines that the allegation of poverty is untrue], and it would be anomalous to hold that it could be otherwise for the purposes of subsection B.").

[5] Had Anderson been incarcerated at the time he filed this lawsuit, his case would have been automatically subject to screening under 28 U.S.C. § 1915A, regardless of his IFP status. That statute provides:

As a starting point, "[w]hen a case is removed the federal court takes it as though

everything done in the state court had in fact been done in the federal court." *Munsey v.*

*Testworth Labs.*, 227 F.2d 902, 903 (6th Cir. 1955) (quoting *Savell v. S. Ry. Co.*, 93 F.2d 377,

379 (5th Cir. 1937)). "All injunctions, orders, and other proceedings had in such action prior to

its removal shall remain in full force and effect until dissolved or modified by the district court."

28 U.S.C. § 1450.

Consistent with these dictates, other federal courts have given effect to IFP

determinations by state courts made prior to removal. In *Sasaya v. Earle*, for example, a

removed case involving a legal malpractice claim filed by an Ohio state prisoner, the court found

that the case had been filed IFP before removal. No. 1:11-CV-00628, 2012 WL 314159, at *8

(N.D. Ohio Feb. 1, 2012). The court "[took] all actions from state court as though they had been

filed in federal court" and thus found that "the only reasonable equivalency is to deem Sasaya to

have proceeded *in forma pauperis*." *Id.* at *8 n.6. Because "the fact of removal does not alter

---

(a) Screening.—The court shall review, before docketing, if feasible or, in any
event, as soon as practicable after docketing, a complaint in a civil action in which
a prisoner seeks redress from a governmental entity or officer or employee of a
governmental entity.
(b) Grounds for Dismissal.—On review, the court shall identify cognizable claims
or dismiss the complaint, or any portion of the complaint, if the complaint—
    (1) is frivolous, malicious, or fails to state a claim upon which relief may
    be granted; or
    (2) seeks monetary relief from a defendant who is immune from such
    relief.

Cases that are removed to federal court are subject to this screening. *See, e.g.*, *Ra-El v. Shelby
Cnty.*, No. 2:16-cv-2082-JDT-cgc, 2017 WL 1048099, at *1 (W.D. Tenn. Mar. 17, 2017)
("Notwithstanding the fact that this case was removed from state court, the Court is required to
screen prisoner complaints . . . .") (citing §§ 1915A(b), 1915(e)(2)(B)); *Davis v. Goss*, No.
CIV.A.6:09-257-DCR, 2010 WL 1872871, at *2 (E.D. Ky. May 10, 2010) ("Screening of *pro se*
prisoner cases is appropriate under the statutory framework, whether a case is initiated in state or
federal court." (citing *Duff v. Yount*, 51 F. App'x 520, 521 (6th Cir. 2002) (per curiam))).

the appropriateness of [§ 1915]'s application here," the court screened the complaint under

§ 1915 and, finding it frivolous, dismissed it.  *Id.* at 9.

Similarly, in *Heller v. Bureau of Vocational Rehabilitation*, the court applied § 1915

where the plaintiff had moved for IFP status in state court, but the application had not been

resolved prior to removal.  No. 5:15-cv-520, 2016 WL 775362, at *3 & n.8 (N.D. Ohio Feb. 29,

2016).  Although the plaintiff "ha[d] not been formally granted leave to proceed in forma

pauperis" by the state court," the court found that "the spirit of 28 U.S.C. § 1915 warrants

application of the statute," permitting the court to certify that an appeal would not be taken in

good faith pursuant to § 1915(a)(3)).  *Id.* (citing *Smith v. Breen*, 2:09-cv-2770, 2010 WL

2557447, at *16 (W.D. Tenn. June 21, 2020)).

Still other courts have found that a state-court IFP request triggers application of

§ 1915(g)'s three-strike rule when the case is removed to federal court.[6]  As explained in *Kotewa*

*v. Corrections Corp. of America*,

> if the plaintiff were allowed to proceed in federal court with disregard to the three
> strike rule simply because his complaint was originally filed *in forma pauperis* in
> state court, and then removed to federal court, "he could continue to file, without
> paying the filing fee, civil rights actions in state court in order to circumvent the
> three strike rule which has been applied to him, barring him from filing *in forma
> pauperis* such actions in federal court pursuant to 28 U.S.C. § 1915(g)."  *Bartelli*,
> 2008 WL 4363645, at *6.  As one court explained: "The implications of
> permitting the continuous filings of actions in state court to bypass the three strike
> rule imposed against [a plaintiff] in federal court would render said rule
> meaningless and without any teeth."  *Id.*

---

[6] That rule provides:

> In no event shall a prisoner bring a civil action or appeal a judgment in a civil
> action or proceeding under this section if the prisoner has, on 3 or more prior
> occasions, while incarcerated or detained in any facility, brought an action or
> appeal in a court of the United States that was dismissed on the grounds that it is
> frivolous, malicious, or fails to state a claim upon which relief may be granted,
> unless the prisoner is under imminent danger of serious physical injury.

2010 WL 5156031, at *3 (M.D. Tenn. Dec. 14, 2010); *see also Harris v. Fla. Dep't of Corr.*, No.

4:14CV575-RH/GRJ, 2015 WL 1729474, at *4 (N.D. Fla. Apr. 14, 2015) ("There is very little

difference, if any, between an *in forma pauperis* action filed by a prisoner in state court that is

removed to federal court, and an action initially filed by the prisoner in federal court.  Both cases

constitute proceedings *in forma pauperis* and to apply different rules to cases started in state

court would open a large loophole for abusive prisoner litigants to circumvent the provisions of

the PLRA.").[7]

Consideration of § 1915's aims commends screening a removed complaint when pauper

status was granted prior to removal.  As explained in *Sasaya*, § 1915 is

> designed largely to discourage the filing of, and waste of judicial resources and
> private resources upon, baseless lawsuits that paying litigants generally do not
> initiate because of the costs of bringing suit and because the threat of sanctions for
> bringing vexatious suits under Federal Rule of Civil Procedure 11.  To this end,
> the statute accords judges not only the authority to dismiss a claim based on an
> indisputabl[y] meritless legal theory, but also the unusual power to pierce the veil
> of the complaint's factual allegations and dismiss those claims whose factual
> contentions are clearly baseless.

2012 WL 314159, at *8 (quoting *Neitzke v. Williams*, 490 U.S. 319, 327 (1989)).  Furthermore,

the Supreme Court has held that, not only did the previous version of § 1915 "authorize[] courts

---

[7] Some courts outside of the Sixth Circuit disagree, determining that screening removed cases
filed IFP in state court is inconsistent with § 1915(g)'s three-strikes provision.  *See Maldonado v.
Baker Cnty. Sheriff's Off.*, 23 F.4th 1299, 1305 (11th Cir. 2022) ("Moreover, Maldonado never
sought in forma pauperis status in federal court after removal.  As a result, Maldonado did not
'bring' an action 'under this section.'"); *Mitchell v. Goings*, 37 F.4th 169, 172 (5th Cir. 2022)
("A court of the United States 'includes the Supreme Court of the United States, courts of
appeals, district courts[,] and any court created by Act of Congress the judges of which are
entitled to hold office during good behavior.'  28 U.S.C. § 451.  State courts are not included.").
Those cases, however, turn on the particular language of § 1915(g)—barring a prisoner with
three strikes from "bring[ing] a civil action . . . under this section"—which the *Maldonado* and
*Mitchell* courts interpreted as applying only to cases originally filed by the prisoner in federal
court.  Because the portion of the statute at issue in this case, § 1915(e), has no such language,
these cases do not directly inform the analysis herein.

to dismiss a 'frivolous or malicious' action, but there is little doubt they would have power to do so even in the absence of this statutory provision." *Mallard v. U.S. Dist. Ct. for S. Dist. of Iowa*, 490 U.S. 296, 307–08 (1989).

The Court finds the authority discussed above persuasive. The Circuit Court's determination of indigency was imported into this case upon removal. Moreover, the concern over a potential waste of judicial resources, as discussed in *Sasaya*, does not evaporate simply because Anderson's plea to proceed IFP came at the state court level before the case was removed to this Court. The Court thus recommends screening Anderson's complaint pursuant to § 1915 and does so below.[8]

## II.    Recommendation to Dismiss Anderson's Complaint under § 1915(e)(2)

Anderson's complaint should be dismissed if it satisfies any of the grounds identified in § 1915(e)(2). *See Benson*, 179 F.3d at 1016. The Federal Defendants appear to assert that Anderson's complaint should be dismissed under § 1915(e)(2)(B)(i) as frivolous and under § 1915(e)(2)(B)(ii) for failing to state a claim upon which relief can be granted. They assert that "Plaintiff's allegations—even if true—do not approach the plausibility necessary to establish any

---

[8] The Federal Defendants further assert that "the Court should consider Plaintiff's prolific filing history when it determines whether to screen the Complaint before requiring Federal Defendants to respond to it." (ECF No. 7, at 4.) Anderson is no stranger to litigation in this district. Before Defendants removed this case, Anderson's most recent lawsuit here was a 2011 case asserting claims against former District Judge James D. Todd. *Anderson v. Todd*, No. 2:11-cv-2977-JPM-dkv (W.D. Tenn. Nov. 2, 2011). In that case, the Court denied Anderson's motion for leave to proceed IFP and ordered him to pay the civil filing fee or face dismissal of his suit. *Id*. at ECF No. 4 (Dec. 2, 2011). When Anderson failed to pay the filing fee, the Court dismissed his suit, explaining that, between 1995 and 2004, Anderson, who was incarcerated at the time, had seven "cases or appeals dismissed as frivolous" and another dismissed for failure to comply with the filing fee requirements of the PLRA. *Id*. at ECF No. 5, at 2 n.1 (Jan. 5, 2012). Because of those frivolous filings, "Anderson's filing privileges are restricted by 28 U.S.C. § 1915(g)." *Id*. at 2. As the Court has determined that § 1915 applies to this case and requires screening, the Court need not consider the impact of Anderson's history and prior filing bans, all made while he was a prisoner and thus implicating different subsections of § 1915.

of the constitutional violations Plaintiff purportedly alleges against Federal Defendants."  (ECF No. 7, at 5.)

 "A complaint can be frivolous either factually or legally.  Any complaint that is legally frivolous would *ipso facto* fail to state a claim upon which relief can be granted."  *Dotson v. Shelby Cnty.*, No. 2:13-cv-2766-JDT-tmp, 2014 WL 3530820, at *7 (W.D. Tenn. July 15, 2014) (quoting *Hill v. Lappin*, 630 F.3d 468, 470 (6th Cir. 2010)).  "Statutes allowing a complaint to be dismissed as frivolous give 'judges not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless.'"  *Hill*, 630 F.3d at 471 (quoting *Neitzke,* 490 U.S. at 327).  So, unlike a dismissal for failure to state a claim under § 1915(e)(2)(B)(i) and Federal Rule of Civil Procedure 12(b)(6), which requires the acceptance of all factual allegations as true, a court need not accept factual allegations that are "fantastic or delusional" when evaluating a claim for frivolousness.  *Id.* (quoting *Neitzke*, 490 U.S. at 327–28); *see also Mattox v. MMHI (Memphis Mental Health Inst.)*, No. 2:19-cv-2530-MSN-dkv, 2019 WL 5106390, at *2 (W.D. Tenn. Sept. 23, 2019), *report and recommendation adopted*, 2019 WL 5103817 (W.D. Tenn. Oct. 11, 2019) ("A complaint lacks an arguable basis in law when it is 'based on an indisputably meritless legal theory.'  A complaint lacks an arguable basis in fact when the contentions are 'clearly baseless' or describe 'fantastic' or 'delusional scenarios.'" (quoting *Neitzke*, 490 U.S. at 327)).

Anderson's claims against all Defendants are based on indisputably meritless legal theories and therefore should be dismissed as frivolous under § 1915(e)(2)(B)(i) and, correspondingly, for failing to state a claim under § 1915(e)(2)(B)(ii).

A.    <u>Anderson has not adequately pled constitutional violations by the MUM
Defendants.</u>

Anderson generally alleges that Defendants violated his First, Fourth, and Fourteenth

Amendment rights.  To the extent Anderson seeks to assert constitutional violations against the

MUM Defendants (MUM, Bjork, Brimhall, Lee,[9] Daniels, Patrick, Goss, and Ed), such claims

have no basis in the law because the MUM Defendants are a private entity and private

individuals.  "The Constitution's protections of individual liberty and equal protection apply in

general only to action by the government."  *Edmonson v. Leesville Concrete Co.*, 500 U.S. 614,

619 (1991) (citations omitted).  "With a few exceptions, such as the provisions of the Thirteenth

Amendment, constitutional guarantees of individual liberty and equal protection do not apply to

the actions of private entities."  *Id.* (citations omitted).

Anderson's claims against the MUM Defendants are properly considered under 42 U.S.C.

§ 1983, which provides for a federal cause of action for "the deprivation of any rights, privileges,

or immunities secured by the Constitution and laws."  *Town of Castle Rock, Colo. v. Gonzales*,

545 U.S. 748, 755 (2005) (quoting 42 U.S.C. § 1983); *see also Eshleman v. Chester Cnty.*, No.

1:15-cv-1106-JDT-egb, 2015 WL 13744665, at \*3 (W.D. Tenn. Nov. 17, 2015), *report and

recommendation adopted*, 2016 WL 843390 (W.D. Tenn. Mar. 1, 2016) ("The Sixth Circuit has

held that § 1983 is the exclusive means by which litigants may sue state officials for violations of

their constitutional rights.").  Stating a claim under § 1983 requires a plaintiff to "allege that the

defendants (1) deprived plaintiff[] of some right or privilege secured by the Constitution and

---

[9] Brimhall and Lee are named as defendants in the caption of Anderson's complaint, but they are
never mentioned again, thus warranting the dismissal of any claims against them.  *See Ward v.
Dunklow*, No. 1:13-CV-304, 2013 WL 3336616, at \*3 (W.D. Mich. July 2, 2013), *aff'd* (Jan. 24,
2014) ("Where a person is named as a defendant without an allegation of specific conduct, the
complaint is subject to dismissal, even under the liberal construction afforded to *pro
se* complaints.") (collecting cases).

laws of the United States and (2) acted under color of state law." *Wagner v. Metro. Nashville Airport Auth.*, 772 F.2d 227, 229 (6th Cir. 1985) (citing *Lugar v. Edmonson Oil Co.*, 457 U.S. 922, 924 (1982)); *see also Terry v. Mills*, No. 2:14-cv-1083-JDT-egb, 2015 WL 1509499, at *4 (W.D. Tenn. Apr. 1, 2015) (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 150 (1970)).

Thus, a plaintiff can maintain a cause of action under § 1983 against a private actor only if that private actor can be deemed to be acting under color of law—if "he is a willful participant in joint activity with the State or its agents." *Id.* (quoting *Adickes*, 398 U.S. at 152). "[A] private party can fairly be said to be a state actor if (1) the deprivation complained of was 'caused by the exercise of some right or privilege created by the State' and (2) the offending party 'acted together with or has obtained significant aid from state officials, or because his conduct is otherwise chargeable to the State.'" *Id.* at 590–91 (quoting *Lugar*, 457 U.S. at 937). Otherwise, a "plaintiff may not proceed under § 1983 against a private party 'no matter how discriminatory or wrongful' the party's conduct." *Tahfs v. Proctor*, 316 F.3d 584, 590 (6th Cir. 2003) (quoting *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50 (1999)).

Anderson has not alleged that the MUM Defendants were acting under the color of state law. He does not allege that they engaged in joint activities with the State in depriving him of any rights under the Constitution, that they took State aid in doing so, or that their actions could otherwise be fairly attributable to the State. Anderson's efforts to assert constitutional violations by these private actors must therefore fail, and it is recommended that his claims under the First, Fourth, and Fourteenth Amendments against the MUM Defendants be dismissed.

B.     The Court lacks jurisdiction over Anderson's claims against the Federal Defendants.

Anderson cannot maintain his claims against the IRS. It is well-settled that the United States of America may not be sued without its consent. *United States v. Mitchell*, 445 U.S. 535,

538 (1980) (citations omitted).  "Absent a waiver, sovereign immunity shields the Federal

Government and its agencies from suit." *F.D.I.C. v. Meyer*, 510 U.S. 471, 475 (1994) (citations

omitted).  Anderson has identified no explicit waiver of sovereign immunity by the United States

that would permit this type of constitutional claim against the IRS, and the Court has identified

none.  *See, e.g.*, *Mitchell*, 445 U.S. at 538 (requiring that a waiver of sovereign immunity "be

unequivocally expressed" (citation omitted)).  The sovereign immunity of the United States thus

prevents this Court from exercising jurisdiction over Anderson's claims against the IRS.

The Court similarly lacks jurisdiction over Anderson's claims against the U.S. Attorney.

Those are properly considered claims under *Bivens v. Six Unknown Federal Narcotics Agents*,

403 U.S. 388 (1971), which, in limited circumstances, allows a plaintiff to recover for

deprivations "of a right secured by the federal constitution or laws of the United States by a

person acting under color of federal law." *Flournoy v. Hemingway*, No. 21-2604, 2022 WL

2180217, at *2 (6th Cir. Apr. 6, 2022) (quoting *Kesterson v. Fed. Bureau of Prisons*, 60 F.

App'x 591, 592 (6th Cir. 2003)).[10]  *Bivens* does not, however, provide a cause of action for the

types of constitutional claims Anderson asserts against the U.S. Attorney.  *See, e.g.*, *Egbert v.

Boule*, 142 S. Ct. 1793, 1803, 1807 (2022) (noting that "recognizing a cause of action under

*Bivens* is 'a disfavored judicial activity,'" and that the Supreme Court has "never held that *Bivens*

extends to First Amendment claims," while ultimately refusing to expand the doctrine to

encompass First Amendment retaliation claims) (citations omitted); *Huang v. Univ. of Pikeville*,

No. 7:18-cv-11, 2019 WL 2357370, at *3 (E.D. Ky. June 4, 2019) (refusing to extend *Bivens* to

---

[10] *Bivens* does not provide grounds for Anderson's claims against the IRS, as "[p]laintiffs cannot
bring *Bivens* suits against the United States"—"*Bivens* claims against the United States and
federal agencies are barred by sovereign immunity." *Hudson v. United States*, No. 2:22-cv-
02804-SHM-tmp, 2023 WL 319960, at *5 (W.D. Tenn. Jan. 19, 2023) (citations omitted).

cover Fourteenth Amendment violations).[11]  All of Anderson's claims against the Federal

Defendants are therefore subject to dismissal.

      C.    <u>Anderson has failed to state nonfrivolous claims against the Federal Defendants.</u>

    Even if the Court had jurisdiction over Anderson's claims against the Federal

Defendants, his claims under the First and Fourteenth Amendment fail to state a claim for which

relief can be granted.[12]

      *1.   First Amendment*

The First Amendment to the Constitution provides:

> Congress shall make no law respecting an establishment of religion, or prohibiting
> the free exercise thereof; or abridging the freedom of speech, or of the press; or
> the right of the people peaceably to assemble, and to petition the Government for
> a redress of grievances.

U.S. Const. amend I.  "It is fundamental that the First Amendment prohibits governmental

infringement on the right of free speech."  *Rendell-Baker v. Kohn*, 457 U.S. 830, 837 (1982).

    Anderson's claims under the First Amendment are not clear.  He first alleges he "was

threatened for exercising my first amendment right to locate my stolen property."  (ECF No. 1-1,

at 4.)  Anderson may be suggesting a claim for retaliation under the First Amendment, under

which a plaintiff "must prove that 1) he engaged in protected conduct, 2) the defendant took an

adverse action that would deter a person of ordinary firmness from continuing to engage in that

---

[11] Though *Bivens* actions have been recognized for certain violations of the Fourth
Amendment—indeed, the original *Bivens* case involved Fourth Amendment violations—
Anderson has alleged no facts that would support any claim of a Fourth Amendment violation by
the U.S. Attorney, who he has alleged merely failed to investigate his claims against the MUM
Defendants.  (*See* ECF No. 1-1, at 4.)

[12] As discussed above, even a liberal construction of Anderson's claims against the Federal
Defendants cannot plausibly be interpreted to state a claim of Fourth Amendment violations, as
he asserts only that the Federal Defendants failed to investigate his allegations against the MUM
Defendants.  (*See* ECF No. 1-1, at 4.)

conduct, and 3) the adverse action was taken at least in part because of the exercise of the

protected conduct." *Holzemer v. City of Memphis*, 621 F.3d 512, 520 (6th Cir. 2010) (quoting

*Siggers–El v. Barlow*, 412 F.3d 693, 699 (6th Cir. 2005)).  The First Amendment does not,

however, contain a right to locate one's stolen property, so Anderson has failed to allege that he

engaged in any protected conduct, warranting dismissal of his claim.  Furthermore, the complaint

is devoid of any allegations that the Federal Defendants threatened him or took any adverse

action against him—instead, his allegations against the Federal Defendants focus on their failure

to act. (ECF No. 1-1, at 4.)  Anderson has thus failed to state a First Amendment retaliation

claim against the Federal Defendants.

        Anderson also appears to assert that the Federal Defendants interfered with his First

Amendment opportunity to petition the Government for a redress of his grievances.  He asserts

that he "requested the IRS to investigate the MUM" and "[s]imultaneously . . . filed . . . a request

for a federal investigation into the violations of my civil rights by the MUM employees for

preventing me from obtaining a documentation of my said initial stolen property and a formal

due process hearing, but received no response from said federal district attorney."  He claims that

he was "denied an investigation by the IRS and said U.S. District Attorney and due process to be

heard."  (*Id.*)

        These allegations cannot form the basis of a claim for a constitutional deprivation

because "a citizen's right to petition the government does not guarantee a response to the petition

or the right to compel government officials to act on or adopt a citizen's views."  *Apple*, 183 F.3d

at 479.  In *Apple*, the *pro se* plaintiff "sued Senator John Glenn, Chief Justice William Rehnquist,

and other top government officials, claiming that the defendants violated his First Amendment

right to petition the government because they did not answer his many letters or take the action

requested in those letters." *Id.* at 478–79.  The court found dismissal appropriate under Federal

Rule of Civil Procedure 12(b)(1) based on the frivolousness of the plaintiff's claims because the

suit was "founded completely on a mistaken reading of" the First Amendment.  *Id.* at 479.

As in *Apple*, Anderson has "no statutory or common law right, much less a constitutional

right, to an investigation."  *Mitchell v. McNeil*, 487 F.3d 374, 378 (6th Cir. 2007) (citations

omitted); *see also Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973) ("[A] private citizen lacks

a judicially cognizable interest in the prosecution or nonprosecution of another."); *Smallwood v.*

*McDonald*, 805 F.2d 1036, 1986 WL 18183 (6th Cir. 1986) (unpublished table opinion) ("The

failure to conduct a full and fair investigation and prosecution of an alleged crime does not state

a claim unless there is a violation of another recognized constitutional right.") (citation omitted).

Instead, the decision to conduct the investigations requested by Anderson is left to the discretion

of the governmental entities.  Anderson certainly may petition the government under the First

Amendment, but his allegation that the government did not heed his petition does not amount to

a claim that the Federal Defendants interfered with his right to do so or otherwise deprived him

of any First Amendment rights.  Anderson therefore fails to state a First Amendment claim

against the Federal Defendants.

### 2.    Fourteenth Amendment

The Fourteenth Amendment to the Constitution provides, in relevant part:

> No State shall make or enforce any law which shall abridge the privileges or
> immunities of citizens of the United States; nor shall any State deprive any person
> of life, liberty, or property, without due process of law; nor deny to any person
> within its jurisdiction the equal protection of the laws.

U.S. Const. amend XIV.  Anderson's claims under the Fourteenth Amendment are also unclear.

To the extent Anderson's due process claim could be said to stem from the Federal Defendants'

failure to investigate, that claim fails because the Federal Defendants had no duty to investigate.

*See Mitchell*, 487 F.3d at 378–79 ("Equally unavailing is plaintiffs' second theory of due process liability—that the defendants failed to investigate the accident adequately.  There is no statutory or common law right, much less a constitutional right, to an investigation.") (citations omitted).  And Anderson's additional claims that the Federal Defendants denied him "due process to be heard, and equal protection of the law" (ECF No. 1-1, at 4) are wholly unsupported by any factual allegations.  Finally, of course, the Fourteenth Amendment "applies only to the States," *Shelley v. Kraemer*, 334 U.S. 1, 8 (1948), and thus cannot be asserted against the Federal Defendants.[13]  Anderson's Fourteenth Amendment claims are legally frivolous and should be dismissed.

## III.    Recommendation to Deny Anderson's Motions for Rule 11 Sanctions[14]

The basis for Anderson's first motion for sanctions is not entirely clear, but it appears to address Defendants' reference in their motion to Anderson's previous lawsuits.[15]  (ECF No. 12, at 1.)  Anderson asserts that Defendants have "omitted the crucial facts that those previous civil actions of mine dismissed and had filing restrictions imposed against me were as a result of a

---

[13] Anderson does not bring a claim under the Fifth Amendment, which provides due process and equal protection rights against the Federal Government.  *San Francisco Arts & Athletics, Inc. v. U.S. Olympic Comm.*, 483 U.S. 522, 542 n.21 (1987) (citations omitted).  Even if he did, it would substantively fail for the same reasons discussed herein, namely a lack of factual support.

[14] Anderson's Rule 11 motions are considered dispositive, necessitating a report and recommendation from the undersigned.  *See Jones v. Waste Mgmt., Inc. of Tennessee*, No. 1:09-cv-1009-JDB-egb, 2009 WL 2588714, at *1 (W.D. Tenn. Aug. 19, 2009) (citing *Bennett v. Gen. Caster Serv. of N. Gordon Co.*, 976 F.2d 995 (6th Cir. 1992), for the proposition that "Rule 11 Motions for sanctions are dispositive and magistrate judges may only enter orders regarding them in consent cases").

[15] Anderson states that his motion is brought pursuant to Tennessee Rule of Civil Procedure 11 and quotes from that Rule.  (*See* ECF No. 12.)  However, the Federal Rules of Civil Procedure apply to the motion.  *See Erie Railroad Co. v. Tompkins*, 304 U.S. 64 (1938); Fed. R. Civ. P. 81(c)(1) ("These rules apply to a civil action after it is removed from a state court.").  In the interests of judicial economy, and because Tennessee's rule 11.03 and Federal Rule of Civil Procedure 11(c)(2) are near replicas of each other, the Court evaluates Anderson's sanctions motions as though they were appropriately brought under Rule 11(c)(2).

longstanding criminal activities and cover up." (*Id.* at 2.)  He asserts that Defendants are "well-aware of the fact that I have been, for decades, hindered, by the U.S. Dept. of Justice (DOJ), to obtain a federal criminal investigation into the longstanding criminal practices by judges of this Court of criminally dismissing my civil actions as being frivolous, which were ratified by the U.S. Court of Appeals for the Sixth Circuit." (*Id.* at 1.)

Defendants argue that the motion should be denied for multiple reasons.  First, they contend that Anderson did not comply with Rule 11(c)(2)'s requirement that he serve the motion for sanctions upon them at least twenty-one days prior to filing the motion.  (ECF No. 15, at 2.)  They next assert that Anderson failed to comply with Local Rule 7.2(a)(1)(B)'s requirement that he consult with them prior to filing the motion and include a certificate of consultation providing the details of that consultation.  (*Id.* at 2–3.)  They also argue the motion fails on substance.

Each of the reasons offered by Defendants warrants denying Anderson's motion.  First, according to Defendants, Anderson "mailed the U.S. Attorney's Office a copy of his sanctions motion the same day that he mailed it to the court clerk for filing." (ECF No. 15, at 2.)  The timing of Anderson's mailing undermines any relief he might be entitled to.  Under Federal Rule of Civil Procedure 11(c)(2),

> A motion for sanctions must be made separately from any other motion and must describe the specific conduct that allegedly violates Rule 11(b).  The motion must be served under Rule 5, but it must not be filed or be presented to the court if the challenged paper, claim, defense, contention, or denial is withdrawn or appropriately corrected within 21 days after service or within another time the court sets.  If warranted, the court may award to the prevailing party the reasonable expenses, including attorney's fees, incurred for the motion.

Compliance with Rule 11(c)(2)'s safe-harbor requirement is not optional.  "[T]he drafters of Rule 11 also included the safe-harbor provision to allow the nonmovant a reasonable period to reconsider the legal and factual basis for his contentions and, if necessary, to withdraw the

offending document." *Penn, LLC v. Prosper Bus. Dev. Corp.*, 773 F.3d 764, 766–67 (6th Cir.

2014) (citing Fed. R. Civ. P. 11(c) advisory committee notes to 1993 amendment). When, as

here, a party fails to adhere to the safe-harbor provision, that failure "precludes imposing

sanctions on the party's motion." *Id.* (citing *Ridder v. City of Springfield,* 109 F.3d 288, 297 (6th

Cir. 1997)). Rule 11(c)(2) "is unquestionably explicit . . . that unless a movant has complied

with the twenty-one day 'safe harbor' service, the motion for sanctions 'shall not be filed with or

presented to the court.'" *Ridder*, 109 F.3d at 296 (quoting former Fed. R. Civ. P. 11(c)(1)(A)).

Anderson did not comply with Rule 11's safe-harbor provision, warranting denial of his motion.

Relatedly, Anderson's motion should be denied based on his failure to comply with Local

Rule 7.2(a)(1)(B), which provides:

> All motions, including discovery motions but not including motions pursuant to
> Fed. R. Civ. P. 12, 56, 59 and 60 shall be accompanied by a certificate of counsel
> or the parties proceeding pro se affirming that, after consultation between the
> parties to the controversy, they are unable to reach an accord as to all issues or
> that all other parties are in agreement with the action requested by the motion.
> Failure to attach an accompanying certificate of consultation may be deemed
> good grounds for denying the motion.
>
> The certificate must contain the names of participating counsel and the date and
> manner of consultation. The burden shall be on counsel filing the motion to
> initiate the conference upon giving reasonable notice of the time, place and
> specific nature of the conference. If an opposing counsel or party refuses to
> cooperate in the conduct of a conference, counsel must file a certificate to that
> effect, setting out counsel's efforts to comply with this rule.

"The essence of Local Rule 7.2 is that counsel for the parties will meet and confer in a good faith

effort to resolve disputes before seeking court intervention." *Barry Fiala, Inc. v. Stored Value*

*Sys., Inc.*, No. 2:02-cv2248-SHM-sta, 2005 WL 8157416, at *4 (W.D. Tenn. Jan. 31, 2005).

"[T]his Court takes a dim view of Local Rule violations." *Nixon v. Hardin Cnty. Bd. of Educ.*,

988 F. Supp. 2d 826, 830 (W.D. Tenn. 2013). Anderson's *pro se* status does not absolve him of

his obligation to abide by these rules. *See Parker v. W. Carroll Sch. Dist.*, No. 2:20-cv-1044-

20

STA-tmp, 2020 WL 7647633, at *1 n.4 (W.D. Tenn. Dec. 23, 2020) (citing *Wallace v. Brown*,

No. 2:17-cv-02269-SHM-tmp, 2020 WL 4228310, at *3 (W.D. Tenn. July 23, 2020)); *see also*

*id.* ("While 'district courts may liberally construe the federal and local rules for *pro se* litigants,

even *pro se* litigants are obligated to follow these rules.'" (quoting *Greer v. Home Realty Co. of*

*Memphis Inc.*, No. 2:07-cv-2639-SHM-egb, 2010 WL 6512339, at *2 (W.D. Tenn. July 12,

2010))).  Anderson failed to follow the rules, and his motion should be denied.

Anderson's first sanctions motion is also substantively meritless.  The gist is that

Defendants should not have raised Anderson's history of litigation in this district in their motion

asking the Court to screen Anderson's complaint.  As explained above, it is incontrovertible that

Anderson faces filing restrictions in this district based on his multiple lawsuits that were

frivolous or failed to state a claim upon which relief can be granted.  Although a history of filing

frivolous lawsuits is not necessarily evidence that all future filings are per se frivolous,

Defendants referenced that history in support of their argument that Anderson's complaint

should be screened.  That nonfrivolous argument was not presented for any improper purpose,

*see* Fed. R. Civ. P. 11(b), and thus is not grounds for Rule 11 sanctions.

Anderson's second motion for sanctions (ECF No. 16) essentially reiterates his first and

should be denied for many of the same reasons.[16]  Anderson asserts that he withdrew his first

---

[16] Defendants seek to strike Anderson's reply in support of his second motion for sanctions.
(ECF No. 19.)  Local Rule 7.2(c) provides that, "[e]xcept as provided by LR 12.1(c) and LR
56.1(c), reply memoranda may be filed only upon court order granting a motion for leave to
reply," which Anderson failed to request.  Anderson responds by implying that Local Rule 7.2(c)
is inapplicable because his motion for sanctions was filed pursuant to Local Rule 12.1(c) or
56.1(c).  (ECF No. 20.)  That implication is incorrect; the motion for sanctions is neither a
motion to dismiss nor a motion for summary judgment.  Because Anderson did not seek leave to
file his reply, Defendants' motion is granted.  *See Harris v. Wells Fargo*, No. 2:18-cv-2400-
JPM-dkv, 2019 WL 11583478, at *1 n.1 (W.D. Tenn. Feb. 20, 2019) (disregarding a reply brief
when plaintiff did not seek leave to file it); *Wingo v. Nike, Inc.*, No. 2:16-cv-2742-SHL-egb,

motion for sanctions (*id.* at 2),[17] and he attaches an exhibit titled "Notice of Intent to Seek

Monetary Sanctions for Violation of Rule 11, Fed. R. Civ. Proc," which he asserts was served on

Defendants on July 28, 2022 (ECF No. 16-1).

This second motion is also procedurally and substantively insufficient.  First, the July 28,

2022 letter does not satisfy Rule 11's safe-harbor provision because it is not a motion, but rather

a letter expressing his intent to file a Rule 11 motion.  "Permitting litigants to substitute warning

letters, or other types of informal notice, for a motion timely served pursuant to Rule 5

undermines" the goals of Rule 11.  *Penn*, 773 F.3d at 767–68 (citation omitted).  "Whereas a

properly served motion unambiguously alerts the recipient that he must withdraw his contention

within twenty-one days or defend it against the arguments raised in that motion, a letter prompts

the recipient to guess at his opponent's seriousness."  *Id.*  Anderson's letter of intent plainly fails

to the meet Rule 11's procedural requirements, which is fatal to his second motion for sanctions.

The second motion also substantively fails for the same reasons the first did.  Anderson

again asserts that Defendants' counsel's account of his litigation history "omits my substantial

challenges to and criminal investigation requests into the criminal imposition of said sanctions."

(ECF No. 16, at 1.)  But Anderson provides no evidence that any such challenges bore any fruit

in lifting those sanctions.  The relevance of any such challenges is thus unexplained, and

Defendants' failure to discuss them is not a basis for sanctions.  Anderson's second motion for

sanctions should also be denied.

---

2017 WL 3037429, at *1 n.1 (W.D. Tenn. July 18, 2017) (same).  The Court disregards
Anderson's reply.

[17] Anderson appears to have sent the Federal Defendants a Motion for Withdrawal of Motion for
Monetary Sanctions, dated July 29, 2022.  (ECF No. 17-2.)  Anderson did not file that motion on
the Court's docket.

IV.    **Remaining State Law Claims**

Anderson asserts that "the MUM defendants' acts also constituted common law

violations of theft of property, fraud, and unfair and deceptive business practices." (ECF No. 1-

1, at 4.) The Federal Defendants removed this action under 28 U.S.C. § 1442(a)(1) because

Anderson's complaint asserts claims against an agency of the United States and its officer for

acts under color of his office. (ECF No. 1, at 3.)

Under 28 U.S.C. § 1367(c)(3), a district court may decline to exercise supplemental

jurisdiction over claims if it has dismissed all claims over which it has original jurisdiction.

*Moses v. Gardner*, No. 2:14-cv-02706-SHL-dkv, 2016 WL 11249025, at *16 (W.D. Tenn. Oct.

11, 2016), *report and recommendation adopted*, 2017 WL 1364977 (W.D. Tenn. Apr. 12,

2017), *aff'd*, No. 17-5497, 2017 WL 9251805 (6th Cir. Nov. 9, 2017); *see also Brooks v. Rothe*,

577 F.3d 701, 709 (6th Cir. 2009) ("If the federal claims are dismissed before trial, the state

claims generally should be dismissed as well.") (quoting *Wojnicz v. Davis*, 80 F. App'x 382,

384–85 (6th Cir. 2003)). Here, because the Court is recommending dismissal of Anderson's

federal claims, the only remaining claims would be state-law claims between apparently non-

diverse parties. It is therefore recommended that the Court decline to exercise supplemental

jurisdiction over Anderson's state law claims.

<u>**CONCLUSION**</u>

Consistent with the foregoing, Defendants' Motion to Strike is GRANTED. It is further

recommended that Defendants' Motion to Screen Complaint Under Local Rule 4.1(b)(2) and 28

U.S.C. § 1915(e)(2)(B) be GRANTED, that Defendants' request to extend their deadline to

respond to the complaint be DENIED AS MOOT, and that Plaintiff's complaint be DISMISSED

as to the Federal Defendants. It is further recommended that both of Plaintiff's Motions for

Sanctions be DENIED.  Finally, it is recommended that Anderson's remaining state-law claims

be REMANDED to the Shelby County Circuit Court.

Respectfully submitted this 21st day of January, 2023.

s/Annie T. Christoff
ANNIE T. CHRISTOFF
UNITED STATES MAGISTRATE JUDGE

**NOTICE**

Within fourteen (14) days after being served with a copy of this report and recommendation
disposition, a party may serve and file written objections to the proposed findings and
recommendations.  A party may respond to another party's objections within fourteen (14) days
after being served with a copy.  Fed. R. Civ. P. 72(b)(2).  Failure to file objections within
fourteen (14) days may constitute waiver of objections, exceptions, and further appeal.